UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                                   :
CARMEN PARADA,                                     :
                                                   :        10 Civ. 0883 (SHS)
                                                   :
                              Plaintiff,           :
                                                   :        OPINION & ORDER
                -against-                           :
                                                   :
BANCO INDUSTRIAL DE VENEZUELA, C.A.,               :
ALEXANDRA BERMEO, OSCAR RECINOS,                   :
DIANNA FERNANDEZ, IRIS ROSA,                       :
FRANKLYN FELIX, DANIEL BETANCES,                   :
and FLOR VALERDI                                   :
                              Defendants.          :
                                                   :
----------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      *Pro se* plaintiff Carmen Parada brings this action against her former employer, Banco

Industrial de Venezuela, C.A. ("BIV"), and several of its employees.  Plaintiff alleges that

defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*,

the New York State Human Rights Law, N.Y.  Exec. L. § 290, *et seq.*, and the New York City

Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.*, by discriminating against her because

of her disability and then retaliating against her for asserting her rights.  She also claims that BIV

violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by denying her

overtime wages.  Plaintiff now seeks leave to file a second amended complaint to add another

defendant, and defendants have moved pursuant to Fed. R. Civ. 12(b)(6) to dismiss the complaint

for failure to state a claim for relief and Fed. R. Civ. P. 12(c) for judgment on the pleadings.

      For the reasons set forth below, the Court converts defendants' motion to dismiss to a

motion for summary judgment, and grants summary judgment in favor of the defendants with

respect to Parada's ADA claims.  Although the Court denies the defendants' motion for

summary judgment with respect to Parada's FLSA claim, the Court declines to exercise supplemental jurisdiction over Parada's state law disability discrimination claims and denies leave to file a second amended complaint because amendment would be futile.

## I.    BACKGROUND

### A.    Parada's Employment Discrimination and Retaliation Claims

In April 2007, Parada slipped and fell on an icy sidewalk, (Pl.'s Mem. in Opposition to Motion to Dismiss III at 107),[1] which "caused [her] to suffer a back injury" and rendered her "unable to sit for lengthy periods of time," (Am. Compl. Part II.E ¶ 1).[2]  At the time, Parada worked at Banco Industrial de Venezuela ("BIV") as a "letter credit specialist," (id.), and, after the fall, she continued to work "with severe pain/inflammation on the neck and lower back, and with strong left ear pulsation," (Pl.'s Opp. III at 9).  To alleviate her pain, Parada "used ice wrapped in a paper towel and worked standing [at] the computer" because she was unable to sit "for long periods of time."  (Id.)

Six months after her fall, Parada asked BIV, for the first time, to accommodate her back injury, (id.), to request an ergonomic chair, (id.), and "to take breaks or stand for part of the day," (Am. Compl. Part II.E ¶ 1).  Despite those repeated requests, Parada alleges that BIV and her supervisors, Oscar Recinos and Alexandra Bermeo, ignored her and failed to accommodate her disability.  (Id.; Pl.'s Opp. III at 7-9.)

---

[1] Parada filed five memoranda in opposition to defendants' motions to dismiss.  The first was filed on May 22, 2010, the second on June 3, 2010, and the third on October 5, 2010.   The fourth and fifth were filed on the same day.  The Court will refer to the October 29, 2010 opposition to Recinos's motion to dismiss as the fourth memorandum in opposition, and will refer to the opposition to Bermeo's motion to dismiss filed on the same day as the fifth memorandum in opposition.

[2] The sections of Plaintiff's Amended Complaint for Employment Discrimination, filed on March 15, 2010, will be referenced as follows: Part I is the "Parties in this Complaint," Part II is the "Statement of Claim," Part III is the "Exhaustion of Federal Administrative Remedies," and Part IV is the "Relief."  Plaintiff also attaches documents to her amended complaint which will be referred to in chronological order: Exhibit A is Parada's charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"); Exhibit B is the EEOC's confirmation of receipt of Parada's filing a charge of discrimination; Exhibit C is the EEOC's notice of right to sue letter; and Exhibit D is Parada's granted request to proceed *in forma pauperis*.

On November 9, 2007, Parada told Betances, a banking practices compliance officer at BIV, (Pl.'s Mem. in Opposition to Motion to Dismiss V at 6), that "she was going to have to take leave because of the severe pain," (Pl.'s Opp. III at 11).  Parada stopped working after that date. (Ex. D to Am. Compl.)  During November, Parada saw several doctors to assess her back condition, (Ex. 9 to Pl.'s Opp. V), and she was diagnosed with "slipped discs in neck and lumbar spine" and was referred to a doctor for "spine surgery evaluation."  (Id.)  On November 27, Dr. Daniel Blum requested that BIV "kindly try to accommodate working conditions to prevent neck and lower back pain, possibly with lumbar support chair."  (Id.)

At the end of the November 2007, Parada sent emails to Recinos and Fernandez to advise them of "[the] result on [her] MRI reports," and of her referral "to [] an Orthopedic Doctor." (Pl.'s Opp. V at 30.)  Parada provided further documentation related to her November medical appointments, and informed BIV that she would be in contact after her "evaluation [by] the Spinal [doctor] on December 3, 2007."  (Id. at 28.)  BIV, however, considered Parada's absence "unexcused," (Pl.'s Opp. III at 117), because the documentation that Parada provided was not sufficient to fulfill company policy, which requires a health care provider to certify that a condition prohibits the employee from working, (id. at 115).  BIV wrote that if Parada were unable to work "because of a medical condition," she may be eligible for short term disability. (Id.)  Parada applied and received short term disability payments for the period between November 11 and February 11, 2008.  (Pl.'s Mem. in Opposition to Motion to Dismiss IV at 4.)

While Parada received short term disability, she remained in contact with BIV stating "that I am unable to go to work, due to my unsatisfactory health condition."  (Pl.'s Opp. III at 117.)  Throughout early 2008, she would periodically supply BIV with evaluations from "M.D. Rehabilitation," (id. at 93-94, 105-106, 114), which stated that she was "totally disabled," stated

certain restrictions on Parada's activity, including "no heavy lifting, pushing or pulling, no prolonged sitting," but did not indicate when or if Parada could return to work, (id. at 106). BIV responded to these submissions with reprimands because Parada failed to communicate "about the status of [her] situation and the date you will be returning to work." (Pl.'s Opp. III at 90, 111, 115, 117.)

Although Parada did receive short term disability payments through February 11, 2008, her application for long term disability benefits was denied because BIV's insurance company "determined that Ms. Parada does not meet the definition of disability in [the company's] policy." (Ex. 9 to Pl.'s Opp. V.) After the denial, BIV wrote Parada that she "should have notified us of [her] return to work" since her "long term disability was denied." (Pl.'s Opp. III at 90.) Parada did not return to work, and on May 1, 2008, BIV considered Parada "to have abandoned [her] job" because she had not contacted BIV and had failed to provide "documentation regarding [her] continued absence from work." (Id. at 85.)

B.     Parada's FLSA Claim

Parada alleges that while she was employed at BIV she was entitled to overtime pay because she regularly worked more than forty hours a week, "normally working five days a week from 9:00 a.m. to 7:00 p.m. with one hour for lunch." (Am. Compl. Part II.E ¶ 2.) She claims that BIV did not pay her overtime wages in violation of the FLSA. (Am. Compl. Part IV. ¶ 4.)

Prior to instituting this action, Parada filed her FLSA claim with the Department of Labor (the "DOL"). (Id.) After investigation, the DOL found that BIV had in fact violated the FLSA by not paying Parada overtime and that BIV owed Parada 1,304.93 in back wages. (Ex. D to Pl.'s Mem. in Opposition to Motion to Dismiss I at 17.) On October 5, 2009, BIV wrote a check

to the DOL for $1,304.93 for the "full amount" of the back wages.  (Ex. C. to Pl.'s Opp. I at 14; Ex. D to Pl.'s Opp. I at 17.)

On November 13, 2009, the DOL sent Parada a WH-60 form, which requests Parada's social security number and address, to forward her the back wages as paid by BIV.  (Ex. A to Pl.'s Opp. I at 7-8.)  Parada did not sign or return the WH-60 form, (Pl.'s Opp. I at 3), and, instead, she sent a letter to the DOL requesting that the DOL return the check to BIV, (Ex. A to Pl.'s Opp. I at 5-6).

C.    Procedural History

After Parada was terminated, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), (Ex. A to Am. Compl.), ultimately receiving a right to sue letter from the EEOC, (Ex. C to Am. Compl.).   She then filed a complaint with this Court.   Parada subsequently amended her complaint to allege claims of disability discrimination, retaliation, and FLSA violations.  Defendants BIV, Fernandez, Betances, and Valerdi subsequently filed a motion to dismiss and defendant Bermeo filed a separate motion, which Recinos has joined.  Because the arguments raised in both motions to dismiss are duplicative and apply to all defendants, the Court will consider both motions to dismiss together.[3]

Defendants supported both motions to dismiss with papers outside the pleadings, and served plaintiff with "Notice to a Pro Se Litigant who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings" warning Parada that the Court "may treat this motion as a motion for summary judgment."  (Notice to Pro Se Litigant, May 14, 2010, September 20, 2010.)  In response, Parada filed five separate opposition memoranda and appended several hundred pages of documentation.  Accordingly, the Court converts defendants' Rule 12(b)(6) and Rule 12(c)

---

[3] Defendant Rosa has not been served, (Pl.'s Opp. III at 19), and thus is not a party to the litigation.

5

motions into motions for summary judgment, see , Krign v. Pogue Simone Real Estate Co., 896 F.2d 687, 690 (2d Cir. 1990).

## II.    DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists where the record taken as a whole could enable a reasonable trier of fact to find for the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In determining whether a genuine issue of material fact exists, the court "is to resolve all ambiguities and draw all permissible inferences in favor of the party against whom summary judgment is sought."  Patterson v. Cnty. of Oneida, 375 F.2d 206, 219 (2d Cir. 2004).  Where the non-moving party is a *pro se* litigant, the court must "liberally construe his pleadings" so as to "interpret his complaint to raise the strongest arguments it suggests,"  Abbas v. Dixon, 480 F.2d 636, 639 (2d Cir. 2007).  However, even a *pro se* litigant "may not rely on mere conclusory allegations, nor speculation, but instead must offer some hard evidence" in support of factual assertions.  D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998); Sanders v. New York City Dep't of Corr., No. 07-cv-3390, 2009 WL 222161, at *3 (S.D.N.Y. Jan. 30, 2009).

### B.    There is No Individual Liability for ADA Disability Discrimination and Retaliation Claims

In her amended complaint, Parada alleges claims for violations of Title I of the ADA for disability discrimination, see 42 U.S.C. § 12112(a); Americans with Disability Act of 1990, tit. I, § 201, PL 101-336, 104 Stat. 327, and Title V of the ADA for retaliation, see 42 U.S.C. § 12203(a); Americans with Disability Act of 1990, tit. V, § 503.  Parada alleges these claims not

only against BIV, but also against Bermeo and Recinos as individual employees.  (Am. Compl. Part II.E ¶1.)  Defendants argue that any claim for individual liability must be dismissed because the ADA does not allow for individual liability.  The Court agrees.

In Spiegel v. Schulmann, the United States Court of Appeals for the Second Circuit held that "the retaliation provision of the ADA . . . cannot provide for individual liability."  604 F.3d 72, 79 (2d Cir. 2010).  The Second Circuit found "that the remedial provisions of Title VII [of the Civil Rights Act of 1964], including § 2000e-5, do not provide for individual liability," and the retaliation provision of the ADA "explicitly borrows the remedies set forth in § 2000e-5;" therefore, the retaliation provisions do not provide for individual liability.  Id. (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir. 1995)) (internal quotations omitted).

Although the Second Circuit has not addressed whether there is individual liability for claims arising under Title I of the ADA—which provides a cause of action for discrimination—for similar reasons, Parada cannot allege individual liability for Title I claims.  The ADA forbids discrimination by an "employer," see 42 U.S.C. §§ 12112(a), 12111(2), and the ADA's definition of "employer," see 42 U.S.C. § 12111(5), mirrors the definitions of "employer" in Title VII, see 42 U.S.C. § 2000e(b).   Because courts "routinely apply arguments regarding individual liability" to Title VII and the ADA "interchangeably," EEOC v. AIC Sec. Investigations, LTD., 55 F.3d 1276, 1279-81 (7th Cir. 1995), courts in this circuit have held that the definition of "employer" in the ADA likewise excludes individual employee liability   See, e.g., Yaba v. Cadwalader, Wickersham & Taft, 931 F. Supp. 271, 274 (S.D.N.Y. 1996) ("[T]he ADA, like Title VII, does not provide for liability of individual employees." (citing AIC Sec. Investigations, 55 F.3d at 1279-81)); Cerrato v. Durham, 941 F. Supp. 388, 394-95 (S.D.N.Y. 1996) (extending the Second Circuit's denial of individual liability pursuant to Title VII to ADA

7

claims).  Therefore, the ADA, like Title VII, does not support individual liability for violations of Title I disability discrimination.

Because both Title I and Title V of the ADA do not provide for individual liability, the individual defendants are entitled to summary judgment in their favor dismissing all ADA claims against them.

C.    ADA Disability Discrimination Claim Against BIV

Parada alleges that BIV discriminated against her because of her disability when BIV ignored her requests for reasonable accommodation of her back injury and subsequently terminated her employment.  The ADA provides that "[no] covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] discharge of employees . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a) (2006).[4]

A plaintiff who alleges a claim of disability discrimination based on the failure to accommodate carries the burden to demonstrate: "(a) that [her] employer is subject to the ADA; (b) that [s]he is disabled within the meaning of the ADA or perceived to be so by [her] employer; (c) that [s]he was otherwise qualified to perform the essential function of the job with or without reasonable accommodation; and (d) that [s]he suffered an adverse employment action because of [her] disability."  Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008) (citing Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)).

---

[4] In 2008, Congress passed the ADA Amendments Act ("ADAA"), which "substantially changes how employers and courts are to evaluate ADA claims,"  Young v. Precision Metal Prods., Inc., 599 F. Supp. 2d 216, 223 (D. Conn. 2009); see also ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, and its effective date is January 1, 2009, ADA Amendments Act of 2008 § 8.  Federal courts have uniformly decided that the ADAA will not be retroactively applied to conduct that preceded its effective date.  Young, 599 F. Supp. 2d at 223; e.g., EEOC v. Agro Distrib., LLC, 555 F.3d 462, 469-70 n.8 (5th Cir. 2009); Kiesewetter v. Catepillar, Inc., 295 Fed. App'x 850, 851 (7th Cir. 2008); Smith v. St. Luke's Roosevelt Hosp., No. 08 Civ. 4710, 2009 WL 2447754, at *13 (S.D.N.Y. Aug. 11, 2009).  Because all relevant conduct is alleged to have occurred prior to January 1, 2009, the Court will not apply the ADAA to Parada's claims.

Defendants contend that Parada cannot demonstrate that she is disabled pursuant to the ADA. A "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2006). Parada alleges that her back condition qualifies as a disability because her inability to sit for long periods of time is a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. §12102(2)(A).

Courts in this circuit adopt a three-part test to determine if a plaintiff has an actual disability:

> *First*, [a] plaintiff must show that [she] suffers from a physical or mental impairment. *Second*, [a] plaintiff must identify the activity claimed to be impaired and establish that it constitutes a 'major life activity.' *Third*, [a] plaintiff must show that [her] impairment 'substantially limits' the major life activity previously identified. If a plaintiff fails to satisfy any of these three prongs, [her] discrimination claim must be dismissed.

Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d 285, 296-97 (S.D.N.Y. 2003) (quotation and citation omitted). Defendants do not claim that Parada's back injury is not an impairment and do not argue that sitting is not a major life activity. Instead, Defendants argue that Parada cannot show that her inability to sit for long periods of time is a substantial limitation on the major life activity of sitting. See, e.g., Sussle, 269 F. Supp. 2d at 298 (noting that sitting is a major life activity) (citation omitted).

Although Parada may suffer from an impairment, not all impairments are sufficiently substantial to constitute a disability pursuant to the ADA. See Reeves v. Johnson Controls World Servs., 140 F.3d 144, 152 (2d Cir. 1998) ("[W]e underscore the basic principle . . . that the ADA does not guard against discrimination based upon *any* physical or mental impairment but only those impairments that are significant."). To determine whether an impairment qualifies

as a disability, the Second Circuit applies the EEOC definition of "substantially limits" to individuals who are:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1); see also Colwell v. Suffolk Cnty. Police Dep't, 158 F.3d 635, 643 (2d Cir. 1998).   Even though the inability to sit for long periods of time affects a major life activity, courts in this circuit find that this inability is not a substantial limitation "as compared to the abilities of the average person in the population."  Glozman v. Retail, Wholesale & Chain Store Food Emp. Union Local, 338, 204 F. Supp. 2d 615, 621 (S.D.N.Y. 2002) (holding as a matter of law that an inability to sit for an extended period of time was not a substantial limitation on a major life activity); see also Colwell, 158 F.3d at 644 (finding that the inability to sit for long periods of time provided insufficient evidence for a jury to find a substantial limitation of a major life activity); Batac v. Pavarini Constr. Co., No. 03 Civ. 9783, 2005 WL 2838600, at *6 (S.D.N.Y. Oct. 27, 2005) ("[T]he major life activity of sitting is substantially limited only if the plaintiff's impairment precludes him from sitting at all, not if the plaintiff's impairment merely makes it more difficult to sit.").

Because, as a matter of law, an impairment which limits the ability to sit for long periods of time is not recognized as a substantial limitation, Parada is not disabled pursuant to the ADA.[5] Therefore she cannot establish a claim for disability discrimination, and the Court grants defendants summary judgment on that claim.

---

[5] Parada claims in her opposition memorandum that she is also limited in her ability to stand and work.  (Pl.'s Mem. in Opposition to Motion to Dismiss II at 3.)  Parada does not provide any factual allegations to support her inability to stand or work.  Although a court should construe a *pro se* plaintiff's allegations liberally, it need not accept unsupported conjecture.  See D'Amico, 132 F.3d at 149.

E.        ADA Retaliation Claim Against BIV

Parada also alleges that BIV retaliated against her by terminating her employment in response to her requests for a reasonable accommodation.  (Am. Compl. Part II.E ¶ 1.)  Section 12203(a) of the ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter."  42 U.S.C. § 12203(a) (2006).  This prohibition includes retaliation against an individual who asserts her right for reasonable accommodation of her disability even if the plaintiff is not disabled pursuant to the ADA, but she has a "good faith belief that the [defendants'] conduct was unlawful under the ADA."  See Sussle, 269 F. Supp. 2d at 313 (quotation and citation omitted).

An ADA claim for retaliation is analyzed under the three-step burden-shifting analysis set forth by the United States Supreme Court in McDonnell Douglas Corp v. Green, 411 U.S. 792, 802-06 (1973).  Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); Lovejoy-Wilson v. Noco Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases.").  To establish a prima facie case for retaliation, a plaintiff carries the burden to demonstrate that: "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action."  Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).  The Second Circuit has determined that the "plaintiff's burden at the prima facie stage is de minimis."  Treglia, 313 F.3d at 719.

Even through Parada may satisfy the first three elements of her retaliation claim, defendants argue that she has failed to establish a causal connection between her requests for reasonable accommodation and her termination.  Proof of a causal connection between the

plaintiff's protected conduct and the adverse employment action can be shown in two manners: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Thomas v. iStar Fin., Inc., 508 F. Supp. 2d 252, 257 (S.D.N.Y. 2007).  Where, as here, the plaintiff does not allege any facts that support a finding of "retaliatory animus" toward the plaintiff, and relies solely on the "temporal relationship" to establish the causal connection between the protected activity and the adverse employment action, that "temporal relationship" must be "very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (quotation and citation omitted) (finding twenty months too long to establish a causal connection).

Defendants contend that Parada cannot rely on the temporal relationship to establish a causal connection because six months lapsed between her last request for reasonable accommodation in November 2007 and her termination in May 2008.  Parada responds that she continued to engage in protected activity through at least January 8, 2008, (Pl.'s Opp. II at 3), and she provides documentation that she continued to contact BIV about her doctor's determination that she was "totally disabled," through March 8, 2008, (Pl.'s Opp. III at 93-94, 99, 105-06).  During 2008, Parada did not inform BIV whether or not she would be able to return to work, and in fact wrote BIV that she would not address that issue until she recovered as follows: "Due to the fact that I am disabled and in my best interest of a prompt recovery, I consider it would be appropriate to postpone any other issues you may have until then."  (Letter dated February 1, 2008, Id. at 105.)

Defendants do not dispute that Parada remained in contact with BIV through March 8, 2008.  Defendants argue that any communication after November 9, 2007 does not represent

protected activity, or requests for reasonable accommodation, and, therefore, Parada's last instance of protected activity was in November 2007 as opposed to March 2008. Although the defendants do not address the question, a reasonable trier of fact may infer that Parada's communications were requests for leave, which may represent requests for reasonable accommodation and thus represent protected activity. The Second Circuit has not yet addressed the question of "whether a finite unpaid leave of absence is a reasonable accommodation under the ADA," although the court has held that "the ADA does not require an employer to give an employee an indefinite leave of absence where there [is] no expectation that the employee would be able to return to work." Graves v. Finch Pruyn & Co., 457 F.3d 181, 185 n.5 (2d Cir. 2006). It is possible that a reasonable trier of fact would determine that Parada's communications, while not explicit, represent good faith requests for reasonable accommodation. Therefore, in resolving all ambiguities in her favor, this Court finds that Parada's last instance of protected activity occurred on March 8, 2008. Despite that finding, however, a reasonable trier of fact cannot infer a causal connection between this last instance of protected activity and Parada's subsequent termination in May 2008.

Because Parada relies solely on the temporal relationship between her protected activity and her termination, she must show that the two were sufficiently close to raise an inference of a causal connection. See Clark Cnty. Sch. Dist., 532 U.S. at 273. The Second Circuit has "no bright line test for how close in time the adverse employment action must be to the protected activity," Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001), but courts in this circuit, including the Second Circuit, have generally held that absent any other factual allegations a period of two months or more is insufficient to establish a causal connection. See, e.g., Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir.

1998) (finding that a two month lapse between the protected activity and adverse employment action did not establish a causal connection); <u>Ruhling v. Tribune Co.</u>, No. CV 04-2430, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) ("[D]istrict courts in this Circuit have consistently held that a passage of two months between the protected activity and the adverse employment action seems to be the dividing line.").

 In Parada's last instance of protected activity, the March 8, 2008 letter, as with her other communications with BIV in 2008, Parada did not mention when or if she would return to work. (Pl.'s Opp. III at 93-94, 105-106, 114.)  By late March 2008, after her application for long term disability was denied and after her last letter to BIV, Parada had not reported to work for four months and had not received disability payments in over a month and a half.  (Ex. D to Am. Compl.; Pl.'s Opp. IV at 4.)  BIV then contacted Parada to ask about her probable return, (Pl.'s Opp. III at 90), but Parada did not respond, (Pl.'s Opp. at 83 ("We understand that your application for long-term disability benefits was denied on March 25, 2008, and you have not contacted us since that date.")).  After fifty-three days of no communication, BIV terminated Parada because "[w]e [] have no choice but to consider you to have abandoned your job, effective today, May 1, 2008."  (<u>Id.</u>)

 Not only did her termination occur less than two months after Parada's last letter to BIV, but the circumstances of this case militate against a finding of a causal connection.  Specifically, by the time BIV terminated Parada, she had not reported to work in six months, she had not received any disability payments in nearly three months, and she had failed to communicate with BIV in any regard for fifty-three days—essentially two months of silence about her continued absence.  Throughout 2008, Parada never referred to any probable return to work at BIV, and BIV is under no obligation to accommodate an employee's indefinite leave where "there is no

expectation that the employee would be able to return to work," <u>Graves</u>, 457 F.3d at 185 n.5.

When a plaintiff relies solely on the passage of fifty-three days and when the employee failed to contact her employer whatsoever, let alone indicate any probability of returning to work after an absence of six months, she fails to provide a basis for a reasonable trier of fact to infer a causal connection.

Therefore, this Court finds that Parada has not carried her burden to establish a causal connection between her protected activity and the adverse employment action.  The Court grants summary judgment in favor of the defendants and dismisses the retaliation claim.

F.     <u>FLSA Claim Against BIV</u>

BIV claims that Parada waived her right to pursue a lawsuit against BIV for violations of the FLSA because the DOL supervised a settlement with BIV, and BIV issued a check to the DOL for the full amount of back wages owed to plaintiff.

The FSLA allows the Secretary of Labor to supervise settlement and specifies what constitutes a waiver of the plaintiff's right to pursue a private suit as follows:

> The Secretary is authorized to supervise the payment of the . . . or the unpaid overtime compensation owing to any employee or employees under Section 206 or Section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have [to sue].

29 U.S.C. § 216(c).  A valid waiver of plaintiff's right to sue requires: "(a) that the employee agree to accept payment which the Secretary [of Labor] determines to be due and (b) that there be payment in full," <u>Sneed v. Sneed's Shipbuilding, Inc.</u>, 545 F.2d 537, 539 (5th Cir. 1977) (quotation and citation omitted), and both elements must be satisfied independently.  <u>Walton v. United Consumers Club, Inc.</u>, 786 F.2d 303, 305 (7th Cir. 1986).

Although the DOL supervised a settlement of Parada's FLSA claim by investigating and negotiating a payment of back wages, Parada did not receive a check from the DOL because she did not complete or return the DOL WH-60 Form.  In fact, Parada requested that the DOL return BIV's check, supporting her claim that she did not agree to the DOL settlement.  BIV does not dispute that Parada did not receive a check for the payment of back wages; instead, BIV argues that the DOL supervision of the settlement is sufficient to constitute waiver.  The Court disagrees.  In order for BIV to prevail, Parada must have agreed to the supervised settlement and must have received payment in full.  Because neither occurred, BIV's motion for summary judgment on plaintiff's FLSA claim is denied.

> G.   New York State and City Law Claims

Parada also alleges claims for disability discrimination pursuant to the New York State Human Rights Law and the New York City Human Rights Law.  These claims are "analytically distinct from disability discrimination claims brought pursuant to the ADA," Sussle, 269 F. Supp. 2d at 316 (quotation and citation omitted), because the definition of disability pursuant to the New York State and New York City human rights laws is broader than pursuant to the ADA, see id. (citing Giordano v. City of New York, 274 F.3d 740, 753 (2d Cir. 2001)).  Therefore, Parada's failure to establish disability discrimination claims pursuant to the ADA does not foreclose her ability to establish disability discrimination claims pursuant to New York State and City laws.  See id. (citations omitted).

The Court will not reach the merits of Parada's state and city claims because those claims are not supported by subject matter jurisdiction[6] and the Court declines to exercise supplemental jurisdiction.  See 28 U.S.C. § 1367(c); Giordano, 274 F.3d at 753 ("Indeed, we conclude that the

---

[6] Diversity jurisdiction pursuant to 28 U.S.C. § 1332 does not exist because defendant Recinos is a resident of New York, (Pl.'s Opp. III at 16), as is plaintiff, (Am. Compl. Part I).

16

state-law claims should be dismissed so that state courts can, if so called upon, decide for themselves whatever questions of state law this case may present.").

H.    Parada's Request to File a Second Amended Complaint

Parada seeks to file a second amended complaint to add Robert Farrell, another BIV employee, to her disability discrimination claims. Because the Court has granted defendants' motion for summary judgment insofar as plaintiff's ADA claims are concerned, and the Court has declined to exercise supplemental jurisdiction over the state and city claims, the amendment is futile. See Jones v. New York Div. of Military & Naval Affairs, 166 F.3d 45, 54 (2d Cir. 1999) (stating an amendment is futile if it is subject to "immediate dismissal").

III.    CONCLUSION

Because the Court finds that the ADA does not provide for individual liability and finds that Parada cannot establish that she is disabled or that her termination is causally connected to her requests for reasonable accommodation, the Court grants defendants' motion for summary judgment with respect to Parada's ADA claims. The Court also denies Parada's request to file a second amended complaint because it is futile, and the Court declines to exercise supplemental jurisdiction over Parada's disability discrimination claims pursuant to the New York State and City law. However, the Court finds that Parada did not waive her right to pursue a private lawsuit against BIV for violations of the FLSA, and the Court therefore denies defendants' motion for summary judgment with respect to Parada's FSLA claim.

Dated: New York, New York
      February 15, 2011

SO ORDERED:

Sidney H. Stein, U.S.D.J.

17